**FILED & ENTERED**

**SEP 04 2014**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** Remy      **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re:<br><br>William Ginzburg<br><br>Debtor(s). | CHAPTER 7<br><br>Case No.:   1:11-bk-11378-MT<br><br>Adv No:   1:13-ap-01024-MT |
| David K Gottlieb, Chapter 7 Trustee<br><br>Plaintiff(s),<br>v.<br><br>Alexandra Fayerman, Alexandra Ginzburg<br><br>Defendant(s). | **MEMORANDUM OF DECISION \RE: MOTION FOR RECONSIDERATION**<br><br>Date:         May 7, 2014<br>Time:        2:00 p.m.<br>Courtroom:  302 |

On February 2, 2011, Dr. William Ginzburg ("Debtor" or "Dr. Ginzburg") commenced his voluntary petition (the "Bankruptcy Case") under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). On October 5, 2011, the case was converted to Chapter 7 ("Conversion-Order"). David K. Gottlieb was appointed as the Trustee (the "Trustee").

On July 19, 2012, the Trustee filed adversary proceeding case no. 1:12-ap-01245-MT against the Debtor objecting to his discharge, (the "Discharge Action"). On January 31, 2013, the Trustee filed the Complaint at issue here against Alexandra Ginzburg ("Defendant" or "Alexandra"); alleging Alexandra is the recipient of fraudulent transfers (the "Alexandra Action"). Following a Motion to Dismiss the Original Complaint, the Trustee filed an amended complaint in the Alexandra Action on June 24, 2013 ("Amended Complaint") [Dkt no 24].

The Discharge Action alleges that Dr. Ginzburg "failed, and continues to fail, to turnover….(d) documents and information relating to payments the Debtor made to his separated spouse, Alexandra Ginzburg… (f) complete documents and information relating to the Beverly Hills Property." Complaint 6:18-24. The Complaint seeks the denial of Dr. Ginzburg's discharge under 11 U.S.C. §727(a)(3) and 727(a)(4)(A), based on alleged fraudulent transfers to Alexandra as asserted by the Trustee in the Alexandra Action. Complaint 6:23-26; 8:21-25.1.

The Trustee claims that Debtor and Defendant were married on September 6, 1992. He alleges that on July 29, 1996, during their marriage, Debtor and Defendant acquired real property commonly known as 2892 Deep Canyon Dr., Beverly Hills, CA 90210 (the "Subject Property"). Then, on or about August 22, 2003, Debtor and Defendant allegedly executed a document entitled "Marital Transmutation Agreement." Through that document, the Trustee alleges that Debtor purported to transfer to Defendant all of his interest in the Subject Property (the "2003 Transfer"). The Trustee maintains that the 2003 Transfer was perpetrated in an attempt to hinder, delay, and/or defraud Debtor's creditors.

Thereafter, on or about June 29, 2009, Defendant recorded a grant deed that purported to transfer the Subject Property to Debtor and Defendant as joint tenants. Exhibit 3 to the Amended Complaint. The following day, on June 30, 2009, Defendant allegedly recorded a grant deed executed by Debtor purportedly transferring the Subject Property back to Defendant for no consideration (the "2009 Grant Deed"). Exhibit 4 to the Amended Complaint. The Trustee maintains that the 2009 Grant Deed was made with the "actual intent to hinder, delay or defraud one or more entities or parties to which Debtor was or became indebted on or after June 30, 2009."

The Trustee seeks a judgment avoiding the 2009 Grant Deed, monetary damages caused by the 2009 Grant Deed, including any decrease in equity arising for liens placed on the Subject Property after June 30, 2009, and for punitive or exemplary damages. Defendant claims that the Subject Property was her sole and separate property since 2003. She argues that the 2009 transfer was a one day transfer made purely to effectuate a refinance of the Subject Property to obtain a more favorable interest rate, upon the advice of the lender, and was never intended to convey title to or back to the Debtor, which is substantiated by the fact that the Debtor immediately deeded the property back to Defendant. The Debtor also has a dissolution action currently pending against Alexandra ("Dissolution Action").

The key area of dispute for purposes of this attorney client privilege issue is that the Trustee claims that in the papers filed in a pre-petition marriage dissolution proceeding with Defendant, the Debtor identified the Subject Property as community property and recorded a lis pendens against the Subject Property on this ground after the June 30, 2009 Grant Deed transferring the Subject Property to Defendant was recorded. To obtain all information surrounding the Marital Agreement and the characterization of the Subject Property, the Trustee served a deposition subpoena on the Debtor's divorce attorneys, Avi Levy and Trabolsi and Associates. They informed the Trustee of the Debtor's assertion of the attorney-client privilege and their intent to object to every document demand and question posed at any deposition on such grounds. Consequently, the Trustee sought a determination that the Trustee holds the Debtor's prepetition and pre-chapter 7 conversion attorney-client privilege, along with the ability to waive such privilege.

**Initial Privilege Motion**

The Trustee filed an Application titled "Chapter 7 Trustee's Motion For Determination That Debtor's Pre-Conversion Attorney-client Privilege Succeeds To Trustee For Limited Purpose" (the "Privilege Motion") [Dkt no. 33]. The matter was scheduled to be heard on shortened time on December 10, 2013 due to a discovery deadline. On December 3, 2013, Debtor filed an Opposition and Defendant filed a Joinder to Debtor's Opposition. [Dkt. no. 39 and 40].

On December 10, 2013, the court conducted the initial hearing on the Privilege Motion. The court allowed an extension of the discovery solely for the Debtor and Deponents documents and depositions, but for no other purpose. The matter was continued to February 5, 2014. In the interim, the court granted the Trustee the right to obtain the documents the Debtor had relating to the Subject Property. An order was entered on January 9, 2014, [Docket no. 44], ordering Debtor to turn over certain documents given to Debtor's marriage dissolution counsel relating to the Subject Property along with a privilege log for anything over which a privilege was asserted. In addition, Debtor was to appear for a deposition. Dr. Ginzburg appeared for deposition, and the deposition was concluded except for issues related to the Privileged Documents.

On February 5, 2014, the continued hearing was held. At the hearing, the court ruled that, under very limited circumstances, the privilege can succeed to the trustee. In balancing the prejudice to the creditors if relevant information is not disclosed against the importance of the attorney-client privilege, the court found that this situation fell in that narrow window where the Trustee succeeds to the Debtor's attorney-client privilege. The court relied on the reasoning of cases permitting a case by case balancing of the Trustee's need for the privileged material. *See* Whyte vs. Williams, 152 B.R. 123 (Bankr. N.D. Tex. 1992); Foster v. Hill (In re Foster), 188 F.3d 1259, 1265 (10th Cir. 1999); Moore v. Eason (In re Bazemore), 216 B.R. 1020, 1024 (1998) (hereinafter "Bazemore"); In re Rice, 224 B.R. 464, 469 (Bankr. D. Or. 1998).

The court also ruled it would reassign and not hear the objection to discharge action so that no privileged information would be carried over into that case. The Trustee was also prohibited from using any of the information discovered in this document request and deposition in the discharge action. Hr'g Tr. pp. 44-46 (February 5, 2014).

An order was entered on March 4, 2014 ("Privilege Order"). [Dkt no. 60]. Debtor had until March 19, 2014, to submit the privileged documents ("Privileged Documents"). On March 13, 2014, Debtor filed a Motion to Reconsider the Privilege Motion ("Reconsideration Motion"). On March 18, 2014, the court entered an order granting the request for a stay of deadlines pending mediation. Mediation was unsuccessful, and the parties are now awaiting the resolution of the reconsideration motion before continuing further with the case.

///

///

///

///

**Reconsideration Motion**

Debtor argues that the Privilege Motion should be reconsidered and the Order vacated because: (1) The Supreme Court issued a decision subsequent to entry of the Privilege Order in Law v. Siegel, 134 S. Ct. 1188 (2014) (hereinafter "Siegel"), holding that the Bankruptcy Court has no inherent powers nor authority under to 11 U.S.C. § 105 to enact substantive federal common law where the Bankruptcy Code does not permit the requested relief; (2) Even if the court were to find the "balancing test" appropriate, notwithstanding Siegel, the court did not make findings as to how the Trustee would be "prejudiced" if the privilege were not to succeed, so the circumstances cannot be said to weigh in favor of succession; (3) in the alternative, it is error to conclude that reassigning a new Judge to the case imposes salutary effect as to the harm that would befall the Debtor because the Trustee still receives the documents; (4) If the court is to enunciate a new rule of law, then Debtor is requesting the opportunity to present law to determine whether the gravamen of the Complaint, a transfer with a positive net benefit to the bankruptcy estate, requires action. If the court is to deny the request for reconsideration, the Debtor requests a stay pending appeal. See Reconsideration Motion [Dkt. No. 62].

Under Rule 9023 of the Federal Rules of Bankruptcy Procedure, "Rule 59 F.R.Civ.P. applies" in bankruptcy cases. Under Rule 59 of the Federal Rules of Civil Procedure, the court may alter or amend a judgment pursuant to a motion that is timely filed. FED. R. CIV. P. 59(e). "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of judgment." Id. This motion was timely filed.

Motions for reconsideration may generally be granted on four grounds: "(1) the judgment is based upon manifest errors of law or fact; (2) there is newly discovered or previously unavailable evidence; (3) amendment is necessary to prevent manifest injustice; or (4) there is intervening change in the controlling law." Id.; *see also* Turner v. Burlington Northern Santa Fe R.R., 338 F.3d 1058, 1063 (9th Cir. 2003); Pilkington v. Cardinal Health, Inc., 516 F.3d 1095, 1100 (9th Cir. 2008). A party may not invoke Rule 59(e) to raise arguments that should have been raised in the first instance, or to rehash arguments already considered and rejected by the court. In re Hutchins, 216 B.R. 1, 9 (Bankr. E.D. Ark. 1997).

1) Intervening Change in the Controlling Law

On March 7, 2014, the Supreme Court issued its opinion in Law v. Siegel, 134 S.Ct. 1188 (2014). In Siegel, the debtor was found to have committed fraud. The Bankruptcy Court ruled that the Trustee could surcharge debtor's homestead exemption to pay the Trustee's attorneys' fees based on the Debtor's conduct. Debtor appealed. The Bankruptcy Appellate Panel and Ninth Circuit affirmed. The Supreme Court, reversed, and held that [t]he broad authority of the bankruptcy court to carry out the provisions of the Bankruptcy Code and inherent power to sanction abusive litigation practices did not extend to surcharging the exemption, since the surcharge contravened the specific prohibition under 11 U.S.C.S. § 522(k) that the exemption was not liable for payment of the attorney fees as an administrative expense. Although a bankruptcy court has statutory authority to issue any order necessary to carry out the provisions of the Bankruptcy Code under 11 U.S.C.S. § 105(a), "in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions" Law v. Siegel, 134 S.Ct. 1188, 1190 (2014).

Debtor argues that, as in Siegel, the Trustee here is attempting to utilize Section 105, and the court's inherent powers, to enact substantive common law and strip Debtor's right to assert an attorney client privilege through State and Federal law, even though the balancing test is nowhere found in the Bankruptcy Code. See Reconsideration Motion at. 6: 7-11 [Dkt no. 62]. Debtor has expanded the holding in Siegel without basis. Debtor's right to assert his attorney client privilege is not analogous to a debtor's right to assert a claim of exemption.

The issue here is solely whether the debtor's attorney client privilege may pass to the Trustee. The court is required to determine this question under Federal Rule of Evidence 501, made applicable to bankruptcy cases through Federal Rule of Bankruptcy Procedure 9017. An earlier Supreme Court case has already specifically discussed the need for the court to determine the scope of the Trustee's control of the privilege. In Commodity Futures Trading Com v. Weintraub, the Supreme Court held that a bankruptcy trustee had the power to waive a respondent commodity broker's attorney-client privilege where the trustee held the corporate management's right to waive the privilege and that power was exercised in accordance with the trustee's fiduciary duty. 471 U.S. 343, 345, 105 S.Ct. 1986, 1989 (1985) (hereinafter "Weintraub"). The Supreme Court in Weintraub was not presented with the issue of an individual bankruptcy and it refrained from answering a question that was not at issue. The Supreme Court did offer guidance in suggesting "if the privilege passes to a trustee, it must be under some theory different from the one that we embrace in this case. [1]

Debtor also contends that Siegel prohibits federal common law from overriding California attorney-client privilege law, and argues that California law prohibits the balancing test the court employed in its original ruling. Debtor claims Siegel prohibits the Bankruptcy court from finding that federal common law trumps California state law. While the court finds this argument equally unpersuasive, Debtor, for the first time in his reconsideration motion cites to the Supreme Court's opinion in Swidler & Berlin v. United States, 524 U.S. 399 (1998). Neither the Trustee nor the Debtor cited this case in the original motion, and the first the court read the case was in connection with Debtor's reconsideration motion. While the case was decided before the original ruling and should have been cited then, the court may not ignore Supreme Court controlling law when there is still an opportunity to correct a clear error of law. Zimmerman v. City of Oakland, 255 F.3d 734, 738 (9th Cir. 2001). Although Debtor has not identified an intervening change in controlling law, he has identified a clear error of law.

///

///

///

///

---

[1] "But our holding today has no bearing on the problem of individual bankruptcy, which we have no reason to address in this case. As we have stated, a corporation, as an inanimate entity, must act through agents. See *supra*, at 348. When the corporation is solvent, the agent that controls the corporate attorney-client privilege is the corporation's management. Under our holding today, this power passes to the trustee because the trustee's functions are more closely analogous to those of management outside of bankruptcy than are the functions of the debtor's directors. An individual, in contrast, can act for himself; there is no "management" that controls a solvent individual's attorney-client privilege." Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 356-57, 105 S.Ct. 1986, 1995 (1985).

2) <u>Swidler</u> Rejection of Balancing Test

There have been a number of lower courts that have construed <u>Weintraub</u> to require, in individual debtor cases, that a court decide whether to let the trustee control the privilege by weighing "the interests of a full and frank discussion in the attorney-client relationship and the harm to the debtor upon a disclosure [against] the trustee's duty to maximize the value . . . and represent the interests of the estate." See <u>Foster v. Hill</u> (<u>In re Foster</u>), 188 F.3d 1259, 1265 (10th Cir. 1999), citing <u>Bazemore</u>, 216 B.R. at 1024; <u>Whyte vs. Williams</u> case, 152 B.R. 123 (Bankr. N.D. Tex. 1992). This court found such cases to be persuasive in its original ruling.  Most of those cases, however, were either decided before <u>Swidler</u> or, oddly, did not cite <u>Swidler</u>. A careful reading of <u>Swidler</u> dictates that the balancing of interests urged by the Trustee is not to be recognized as an exception to "one of the oldest, recognized privileges in the law."

In <u>Swidler</u>, the Supreme Court addressed a federal grand jury subpoena for the handwritten notes of an attorney a witness consulted with shortly before committing suicide. The Court found that the notes were protected by the attorney client privilege and there was no exception based on limited posthumous privilege termination cases in the probate area. The Court acknowledged that a criminal grand jury inquiry was at issue concerning alleged misconduct in a White House investigation, and that the holder of the privilege was no longer alive.  The Court still rejected the Independent Counsel's argument that an interest in determining whether a crime has been committed trumped confidentiality where the holder of the privilege was deceased.

The Independent Counsel argued for a limited exception for such criminal investigations and argued it would have minimal impact on the sanctity of the privilege.  The Independent Counsel urged that the balancing test employed by the Court of Appeals was appropriate where the cost of protecting attorney client communications was so high. The Supreme Court flatly refused to permit any balancing of the attorney-client privilege. "Balancing *ex post* the importance of the information against client interests, even limited to criminal cases, introduces substantial uncertainty into the privilege's application.  For just that reason, we have rejected use of a balancing test in defining the contours of the privilege." <u>Swidler & Berlin v. United States</u>, 524 U.S. 399, 409, 118 S.Ct. 2081, 2087 (1998), <u>citing</u> <u>Upjohn</u>, 449 U.S. at 393; <u>Jaffee</u>, 518 U.S. at 17-18.

Here, the result of sustaining the assertion of Debtor's privilege is that the Trustee will not obtain possibly relevant information in a fraudulent transfer action seeking to bring assets into the estate.  The Supreme Court addressed Independent Counsel's similar concern in a criminal investigation by reiterating statements in previous cases explaining that "the loss of evidence admittedly caused by the privilege is justified in part by the fact that without the privilege, the client may not have made such communications in the first place." <u>Swidler,</u> 524 U.S. 399, 408, citing <u>Jaffe</u>, 518 U.S. at 12; <u>Fisher v. United States</u>, 425 U.S. 391, 403 (1976).

In <u>Swidler</u>, Independent Counsel argued that "existing exceptions to the privilege, such as the crime-fraud exception and the testamentary exception, make the impact of one more exception marginal."  The Supreme Court rejected this rationale.  Similarly, while the need for a bankruptcy trustee to marshal assets and properly investigate the affairs of a debtor provide a strong basis for the balancing test to be permitted here, the Supreme Court has clearly prohibited such a "one more exception" approach.  Even when faced with the question of whether a

criminal defendant's constitutional rights should cause the attorney client privilege to yield, the Ninth Circuit also relied on Swidler to uphold the trial court's refusal to waive the privilege. See Murdoch v. Castro, 609 F. 3d 983, 994 (9th Cir. 2010). Thus, federal common law simply prohibits the balancing of the trustee's duties and need for the information with the debtor's attorney client privilege.

This ruling relying in this reconsideration motion applies solely to communications that the parties have stipulated are privileged where there was a communication by the Debtor to his divorce counsel for purposes of advice in the contemplated divorce proceeding. This ruling does not address situations where there was a previous waiver of the privilege, Mohawk Indus. V. Carpenter, 558 U.S. 100 (2009), or where the debtor makes prepetition disclosures to a bankruptcy attorney for purposes of disclosure in the bankruptcy, United States v. Bauer, 132 F. 3d 504 (9th Cir. 1997), or where there is a limited partnership's privilege involved, United States v. Campbell, 73 F.3d 44, 47 (5th Cir. 1996)(partnership privilege similar to that of a corporation which passes to the trustee), or even where the privilege is solely that of the debtor-in-possession and not necessarily that of an individual in control of the debtor-in-possession, Ramette v. Bame (In re Bame), 251 B.R. 367 (2000) (privilege passed to trustee for time when debtor served as debtor-in-possession); William v. Whyte, 152 B.R. 123(Bankr. N.D. Tex. 1992)(debtor-in-possession privilege passed to liquidating trust). This also has no bearing on the well-established crime-fraud exception, United States v. Ballard, 779 F.2d 287 (5th Cir.), *cert. denied*, 475 U.S. 1109 (1986), which the trustee has stipulated does not apply here. Each of those situations raises a different set of circumstances and considerations that are not necessary to address here.

3) Federal Common Law and California Privilege Law

The briefs and oral argument also addressed whether federal common or California law should control the privilege determination. Federal Rule of Bankruptcy Procedure 9017 provides generally that the Federal Rules of Evidence apply in cases under the Bankruptcy Code. Federal Rule of Evidence 501 provides that, except where state law provides the governing rule in civil proceedings, federal common law governs the assertion of evidentiary privileges. Thus, federal common law governs control of a debtor's privileges. Ramette v. Bame (In re Bame), 251 B.R. 367 (2000). The question of privilege asserted in bankruptcy court is a procedural question and existing federal law is to be used. Moore v. Eason (In re Bazemore), 216 B.R. 1020, 1022 (Bank. S.D. Ga.1998) (hereinafter "Bazemore").[2]

To the extent that either party believes application of California law would dictate a different result, the application of California law will be briefly addressed. "The [California] Evidence Code . . . sets out a statutory privilege for attorney client communication (§ 954) and declares all such communication presumptively confidential (§ 917)." Insurance Co. of N. Am. v. Super. Ct., 108 Cal. App. 3d 758, 762 (Cal. Ct. App. 1980). Debtor cites to these provisions

---

[2] Federal privilege law will control even if the evidence sought is relevant to both the federal and state claims. von Bulow v. von Bulow, 811 F.2d 136, 140 (2d Cir.1987). In such situations, courts consistently have held that the asserted privileges are governed by the principles of federal law. Id.; see also Agster v. Maricopa County, 422 F.3d 836, 839 (9th Cir.2005) ("Where there are federal question claims and pendent state law claims present, the federal law of privilege applies."). It is only where a discrete bankruptcy adversary proceeding involves litigants squaring off solely under state law claims will Rule 501 require reference to state privilege law. See In re: Couch, 80 B.R. 512, 514–16 (S.D.Cal.1987) (applying California privilege law to bankruptcy proceeding where Trustee had filed direct action for claims under California Insurance Code). In re N. Plaza, LLC, 395 B.R. 113, 122 (S.D. Cal. 2008)

and <u>Solin v. O'Melveny & Meyers</u> for the proposition that under California law there can be no balancing of the attorney-client privilege to prosecute a lawsuit to redress a legal wrong. 89 Cal. App. 4th 451, 107 Cal. Rptr. 2d 456 (2001) (hereinafter "<u>O'Melveny</u>"). In <u>O'Melveny</u>, an attorney was suing a law firm, and the trial court determined that defendant could not defend himself without revealing privileged information. Only by disclosing exactly what plaintiff communicated to defendant could defendant explain why it gave the advice it did. The plaintiff's clients held the privilege and neither the plaintiff nor the defendant could reveal the privileged information. The court would not permit a balancing of the equities to permit revelation of possible confidences. The privilege belonged to third parties not even involved in the litigation. The privilege was those third parties' right to assert or waive, as the holders of privilege. <u>O'Melveny</u> may stand for a prohibition on a balancing test, although as the case focused heavily on the third party to the litigation, it is not clear whether the ruling might be different in another context. Either way, the California Evidence Code and <u>O'Melveny</u> indicate that there is no clear or straightforward "test" known as the balancing test under California law.

As neither federal common nor California law authorizes the balancing test employed in the court's original ruling, application of California law would not change the result here.

4) <u>Prejudice to the Trustee</u>

Debtor argued also that the order should be vacated because nothing in the record reflects prejudice to the Trustee. Because <u>Swidler</u> prohibits any balancing of the prejudice to the Trustee compared to the harm to the debtor, there is no need to address this question to determine the application of the privilege. Because the Trustee is also seeking entry of a judgment denying Debtor his discharge, based in part on the same allegations that allegedly give rise to fraudulent transfers in the Alexandra Action, and the implications for the objection to discharge action were discussed at the privilege hearings, the question of prejudice should still be briefly addressed.

The Trustee was only seeking a narrow waiver limited to just communications from the Debtor to his family law attorney and only with respect to the property in the lawsuit. The Trustee had a strong interest in seeking the waiver in order to fulfill his duties under the Bankruptcy Code where there was the potential of bringing assets in to pay creditors. The prejudice to the estate includes the potential loss of a significant asset that can potentially pay off all creditors. Whether the property is properly part of the bankruptcy estate must still be determined, so whether the Trustee is correct in the objection to discharge action that the Debtor has thwarted the recovery of an asset still hinges on a question of fact left for a later trial. The law requires those issues to be resolved without access to privileged information, regardless of the effect this has on the Trustee's investigation.

While the Trustee will not obtain the communications the Debtor made to his divorce counsel, he does have any documents filed in connection with that case and any statements Debtor made elsewhere. He will be free to examine the Debtor concerning the *lis pendens* filed on his behalf on the property in question in so far as the Debtor is not asked to reveal privileged information. As the Court of Appeals explained in <u>Murdoch</u>, the attorney client privilege protects simply the communication between the attorney and the client, not the facts that are communicated. The opposing party may still cross examine and establish the facts through other means. Murdoch, *supra* at 995.

The result of this ruling is that Debtor's duty to assist the Trustee in bringing assets back into the estate is trumped by Debtor's right to assert an attorney client privilege, but that is only a small part of the Debtor's duties. The pending discharge proceeding and this fraudulent transfer action will both continue without the benefit of potentially relevant information. By not waiving the privilege here, the question of debtor's responsibilities can be evaluated independently in the objection to discharge action where solely his actions are at issue, and not as a third party to this fraudulent transfer action. They are more properly evaluated without the benefit of privileged information. Thus, any question of the Debtor's cooperation or activities in the bankruptcy case will be left solely to the proof in the discharge trial and not addressed here.

**Additional Requests**

Debtor requests the court take judicial notice of 1) Trustee's opposition to Defendant's motion for summary judgment; 2) Stipulation to Stay Action Pending Appeal; and 3) Order granting Stipulation to Stay Action Pending Appeal. Because the Court has reconsidered the original order and now sustains the assertion of the attorney client privilege, there is no need to consider the items submitted as part of the summary judgment motion or the request for a stay pending appeal. They are moot.

**Conclusion**:

The reconsideration motion is GRANTED. Debtor may properly assert the privilege with respect to communications to his divorce attorneys. Debtor to submit an order in accordance with this opinion within 7 days.

###

Date: September 4, 2014

Maureen A. Tighe
United States Bankruptcy Judge